CASE 48.—PROCEEDING BY D. B. WEAVER AGAINST R. B. COWPER TO RECOVER DAMAGES FOR DEFENDANT'S FAILURE TO PERFORM HIS BID AT A JUDICIAL SALE OF LAND.—JAN. 10.

# Cowper v. Weaver's Admr.

APPEAL FROM LIVINGSTON CIRCUIT COURT—J. F. GORDON, CIRCUIT JUDGE.

JUDGMENT FOR PLAINTIFF, DEFENDANT APPEALS. REVERSED.

JUDICIAL SALES—BIDDER—REFUSAL TO PERFORM BID—LIABILITY.

Where the commissioner treats a bid at a judicial sale as a nullity, for refusal of the bidder to take the property, and resells the property—the last sale being confirmed by the court without objection—it is then too late to proceed against the first bidder for the difference between his bid and the amount received on the resale.

HENDRICK & MILLER AND J. C. HODGE, ATTORNEYS FOR APPELLANT.

The response, by proper allegation, makes the following points:

1. That the decedent, D. B. Weaver, at the time of his death was not the owner of any of the lots sold, and was without title to any or either of them.

2. That the court had no power to sell same, because no title papers were filed.

3. That the pleadings show that the decedent had no possessory title, never having resided upon or cultivated any or either of said lots, and none of them having been inclosed.

4. That there is nothing in the record to show that the surveyor was directed to survey any specific property, and nothing to indicate that he did survey any property belonging to the decedent, or that any of the property sold was ever ordered by the court to be surveyed.

5. That the only allegation in plaintiff's pleadings in reference of the lots sold, was made by the amended petition filed April 13, 1903, and that at the time the warning order of February 11, 1903, was made, there was absolutely nothing in the pleadings to indicate that either or any of the lots bid for by the appellant would be sold, or showing that the decedent had any title, or claimed any interest or ownership therein, and that the warning order was, therefore, premature, it having been spread before there was a reference in the pleadings to the lots in controversy.

6. That the affidavit for a warning order did not show that the unknown defendants and heirs were absent from the State, or believed to be absent therefrom; and that the warning order was, therefore, null and void.

7. That the amended petition, in which these lots were attempted to be claimed as the property of the decedent, was filed April 13, 1903, and the judgment directing their sale was filed on the 23d day of the same month, just ten days after they had been embraced by the pleadings; and up to the said 23d day of April no claim had been made in the pleadings to any of said lots.

8. That, prior to said sale, no proof was taken as to the number or non-residency of any of the defendants, nor was any bond executed as required by section 410 of the Civil Code.

9. That the court, of its own motion, on the 25th day of September, 1903, before any rule had been executed on this appellant, or even asked for, entered an order treating the sale of the lots to the appellant as a nullity, and directing the commissioner so to treat said sale, and to resell the said lots.

10. That before any rule was taken against him the lots in controversy had been resold, and the sale thereof had been confirmed, and that, therefore, at the time he was notified that an attempt would be made to hold him responsible for the difference in the bids upon said lots, the plaintiffs in the court by their action and orders had placed it beyond the power of the respondent to execute the bond or accept deeds thereto, even if any title could have been conveyed to him.

Brownfield v. Dyer, 7 Bush, 507; Griggs v. Barr, 14 Bush, 330; Arthurs v. Harlan, 78 Ky., 138; Redwine v. Underwood, &c., 101 Ky., 190; Code, secs. 691, 126, 409; Jackson v. McElroy, 2 Bush, 132; Code, sec. 410; White v. Moyers, 18 R., 402; Tatum v. Gibbs, 19 R., 695; Hogue v. Yeager, 21 R., 1299; Morgan v.

Wickliffe, 24 R., 1040; Civil Code, sec. 375; Mitchell v. Kinnaird, 17 R., 1250; Makeson v. Brawn, 18 R., 584.

J. W. ,BUSH, C. H. WILSON AND C. C. GRASSHAM, ATTORNEYS FOR APPELLEE.

## POINTS AND AUTHORITIES CITED.

1. Necessary averments of petition to sell decedent's real estate for debt. Civil Code, sec. 429.

2. Court may, at any time, admit any amendment which does not change, substantially, the claim or defense. Civil Code, sec. 134.

3. Requisites of affidavit for warning order for unknown defendants. Sec. 57, subsec. 7, Civil Code; Hogue and Others v. Yeager and Others, 21 R., 1299.

4. Verified pleadings, equivalent to affidavits. Wilson v. Teague, 95 Ky., 47.

5. Judgment, not void, although defective and reversed, does not affect purchaser's title to the land. Bailey v. Fanning Orphan School, 12 R., 644.

6. Cases in which title papers are required to be filed. Sec. 492, Civil Code; Rodgers, &c., By, &c. v. Rodgers, Admr., &c., 17 R., 358.

7. Affidavit, unless controverted, is sufficient evidence to support an action, as well as warning order. Sec. 58, subsec. 6, Civil Code.

8. When no bond given, court may preserve undistributed proceeds until properly applied for. Sec. 411, Civil Code; Hogue and Others v. Yeager, &c., 21 R., 1299.

9. Failure to appoint attorney or take bond, reversible errors. Jurisdiction being complete, judgment not void. Sec. 410 (formerly 440), Civil Code; Thomas v. Mahone, 9 Bush, 111,

10. Sale under decree is valid, unless decree be void, although it may be reversed. Gossom v. Donaldson, 18 B. M., 230; Harrison v. Hord, 12 B. M., 472; Yocum v. Foreman, 14 Bush, 494.

11. Measure of damages, where a purchaser of land at public auction failed to comply with the terms and accept land, is difference between price bid at first sale and the amount of second sale, together with costs and expense of second sale. McBrayer v. Cohen, 13 R., 667; Sherley v. Shewmaker's Assignee, 23 R., 452; Tyler and Others v. Guthrie and Others, 17 R., 1193; Brasfield, &c. v. Burgess, &c., 10 R., 660; Page v. Hughes' Heirs, 9 B. M., 115; Lloyd, Trustee, v. Wagoner, Assignee, &c., 93 ——, 653.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

D. B. Weaver died a resident of Livingston county, and his administrator brought this suit to sell the land owned by him for the payment of debts, and for the settlement of his estate. At the April term, 1903, a judgment was entered directing a sale of the real estate. The sale was made on June 1st, and at it appellant, R. B. Cowper, bid in lots 67, 68, 69, 70, and a part of lot 17, for $265. After the sale he seems to have concluded that the title of the intestate to the land was not good, and refused to execute a bond for the price. The commissioner on September 9th filed his report of sale, stating that Cowper had purchased the property at the sale, and had refused to execute a sale bond. On this report on September 25th the court, without taking any proceedings against Cowper or confirming the sale, entered the following order: "It appearing to the court by report of the master commissioner, W. I. Clarke, that he sold to R. B. Cowper lots 67, 68, 69, 70, and 71, and a part of outlot No. 17, as appears on the town plat of Smithland, Kentucky, and said Cowper having failed and refused to execute bonds therefor, and said fact being made known to this court as aforesaid, the said commissioner is here directed to treat said sale to Cowper as if it had not been made, and readvertise said property for sale, and sell same in the full way and manner set out and directed in the judgment filed herein, and will in all respects comply with said judgment in taking bond, making report, and so forth and so on, as herein set out; and this cause is continued." The resale was made on November 2, 1893, and at it the property brought the sum of $32. Thereupon, at the December term of the court, the court awarded a rule against Cowper to show cause, if any he could, why he should not pay the difference between the bid made by him and the bid made at the second sale, which

the court then confirmed. Appellant, Cowper, in response to this rule, set out that the intestate had no title to the property, and also relied on various irregularities in the proceedings. He also set up the order above quoted, by which the sale to him was ordered to be treated as a nullity, and pleaded it in bar of the rule, in connection with the subsequent orders of the court confirming the second sale, and conveying the property to the purchaser thereat.

In Makemson v. Brann, 37 S. W., 495, 18 Ky. Law Rep., 584, the commissioner sold a tract of land, and, the purchaser failing to execute bond, readvertised the property, and made a second sale at the next county court. He then reported to the court both the sales. The court confirmed the second sale, and ordered the property conveyed to the purchaser. After this a rule was taken out against the purchaser at the first sale to show cause why he should not pay the deficiency. It was held that he was not liable. The court said: "While an accepted bidder at a judicial sale who fails to comply with his bid may, by proper proceedings, be required to pay the damage resulting from such failure, which would include the difference between the bid, if any, and the amount realized on the final sale, if the property sold for less on that sale than at the former sale, yet, where the commissioner has elected to treat the bid as a nullity, and has proceeded to advertise and resell the property, and the second sale has been confirmed without objection, it is then too late to proceed against the first purchaser for failure to comply with the terms of the sale." The commissioner, in making the sale, is the agent of the court. His powers are limited by the orders of the court. He has no power to treat a sale as a nullity, and in the case cited the judgment of the court turned, not on the action of the commissioner, but on the order of the court confirming the action of the commissioner, for

the act of the agent amounted to nothing until it was ratified
by the court. The commissioner is simply ordered to sell the
property. He is without power to release the purchaser from
his obligation. The liability of the purchaser depends upon
the action of the court. In the case at bar the court ordered
the sale to be treated as a nullity. He directed the land to
be resold, and when that sale was made, he confirmed it and
directed the property to be conveyed to the purchaser. The
purchaser at the first sale was only a preferred bidder until
his bid was accepted by the court by confirming the sale. The
contract was not complete, and when the court decided not
to confirm the sale, but to treat it as though it had not been
made, the purchaser stood simply as any other person who
makes a proposition which is not accepted. When the pur-
chaser fails to execute his bond, it may be that the parties
prefer another sale, thinking that the property will sell for
more, and in this event the court may so order without tak-
ing any proceedings against the purchaser. But if it is de-
sired to hold the purchaser, then his bid must be accepted by
the court, and if he still refuses to give the bond, a resale
may be ordered, or the purchaser may be dealt with as in
cases of contempt; and in this state of case, if the land on the
second sale sells for more than on the first, the surplus will
belong to the purchaser. The court can not, however, treat
the sale as a nullity, and thus keep the surplus, if the land
on the second sale sells for more than on the first, and at the
same time hold the purchaser responsible for the deficiency
if on the second sale it sells for less. In Shirley v. Shew-
maker's Assignee, 63 S. W., 11, 23 Ky. Law Rep., 452, the
first sale was confirmed by the court and a rule was taken
against the purchaser to show cause why he should not give
bond, which was made absolute. Brassfield v. Burgess, 10
S. W., 122, 10 Ky. Law Rep., 660, is in effect the same, and

so is Tyler v. Guthrie, 33 S. W., 934, 17 Ky. Law Rep., 1193. But in none of the cases is the court allowed to treat the sale as a nullity, and still proceed to hold the purchaser liable.

Judgment reversed and cause remanded, with directions to discharge the rule against appellant