## Hoefflin, et al. v. Kentucky Title Savings Bank & Trust Company, et al.

(Decided May 1, 1913.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Judicial Sales—Liabilities of Bidder—Court Commissioner.— Where the court was largely induced to set aside a report of sale of real estate by a proposal, accompanied by bond as a guaranty, of good faith, to become a bidder at a resale at a price in advance of that reported, and authorizing the commissioner to bid and execute bonds for him, it was the duty of the commissioner to cry and report said bid if the highest; and such bidder must take the property and comply with the terms of sale. As his agreement was made with the court, he cannot be relieved of his liability, by any action on the part of the property holders or other interested parties, without the consent of the court.

2. Judicial Sales—Bidders—Courts—Jurisdiction.—Where in a judicial sale of property, one proposes to become a bidder at a resale, if the report of sale is set aside, and is permitted by the court to file his proposal, he thereby becomes a party to the action and is bound by the further orders of the court.

3. Judicial Sales—Payment of Bid.—Payment of the amount of purchase money, or bonds therefor, of a bidder at a judicial sale of property, if his bid is accepted by the court, may be enforced by summary process.

DUFFIN, SAPINSKY & DUFFIN for appellants.

OSCAR BADER for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

The Kentucky Title Savings Bank & Trust Company held a mortgage to secure the payment of $5,000 on certain real estate in the city of Louisville, Kentucky, owned by Bertha Christ Crofts and her husband, Samuel T. Crofts. In a suit to enforce the payment of said debt, a judgment was entered in December, 1910, directing the sale of the property. In January, 1911, it was advertised for sale, but, at the request of the property owners, no sale was made at that time. Later it was again advertised for sale, and, on March 27th, was publicly sold and one Louis Summers became the purchaser for $6,250. This sale was reported to the court. To this report of sale the Crofts filed exceptions, one of said exceptions being that the price at which the property had been sold was grossly inadequate. The exceptions were accompanied by the affidavit of one William C. Hoefflin, in which he alleged that the property was reasonably worth $10,000 and that, if the sale was set aside and the property resold, he would bid this amount for it, and, as evidence of his good faith, he filed a bond obligating himself to bid, or cause to be bid for him, the sum of $10,000 for the property when resold. The bond was signed by the National Surety Company as surety for him. The following is a copy of the affidavit and the bond, which accompanied it:

## AFFIDAVIT.

"Affiant, William C. Hoefflin, says that he is a resident and citizen of Louisville, Jefferson County, Kentucky, and has been such resident and citizen for the past thirty-five years; that he is thirty-five years of age and has had considerable experience in the purchase and sale of realty in the aforesaid city; that he is well acquainted with the realty herein involved and has made a thorough investigation and examination thereof; that from the investigation and examination he places the reasonable worth and market value of said realty at the sum of at least $10,000, viz., lot of ground sixty dollars per front foot and improvements $6,000; that he is willing and desirous of purchasing said realty and he will (if the sale to Louis Summers, made herein on March 27, 1911, be set aside by this honorable court and a new sale of the realty ordered under the judgment herein) bid therefor the sum of at least $10,000, to be paid under the terms and conditions of the judgment herein, and he has made bond of this date with the National Surety Company as

surety thereon conditioned as above set forth and providing that should he fail to attend at said sale and bid for said realty the aforesaid sum of at least $10,000, that the commissioner of this court (or such person as the court may authorize so to do) may bid for and in this affiant's name the aforesaid sum and for him may execute the sale bonds called for by the judgment herein, with the aforesaid National Surety Company as surety thereon—the said acts of said commissioner (or person authorized so to do by this court), to have the same force and effect as if done by this affiant; that said Surety Company likewise agrees to and binds itself that its name may be signed as such surety to sale bonds with the same force and effect as if done by its duly authorized agent or attorney-in-fact. Affiant says that he has no interest whatsoever in the outcome of this litigation; that he will receive nothing for his action herein, neither has he been made by anyone any promise of any sort for his action herein; that his attention was drawn to said realty by Messrs. James R. Duffin and S. M. Sapinsky, attorneys for Mr. and Mrs. Crofts and that his aforesaid bid is made in the utmost good faith.

WILLIAM C. HOEFFLIN.

"Subscribed and sworn to before me by William C. Hoefflin this 7th day of April, 1911. My Commission expires February 24, 1914.

(Seal)          VIRGIL O. DUFFIN, N. P. Jeff. Co., Ky."

### BOND.

"Know All Men by These Presents:—

"We, the undersigned, William C. Hoefflin and The National Surety Company, do hereby obligate and bind ourselves to the plaintiff herein, Kentucky Title Savings Bank & Trust Company, and the defendants hereto, Bertha Christ Crofts and Samuel T. Crofts, her husband, and City of Louisville, and each of them, and to each and every officer of this court and to all other persons having any interest therein; that should the court set aside and hold for naught the bid of Louis Summers for $6,250 for the realty in the judgment herein described made at the commissioner's sale had on March 27th, 1911, as shown by said commissioner's report of sale filed herein on April 1, 1911, and should the court sustain the exceptions of Bertha Christ Crofts and Samuel T. Crofts, her husband, to said report of sale, then and in that event,

the said William C. Hoefflin will, at a new sale had under
the judgment herein, bid for the realty herein involved,
and in the said judgment specifically described, the sum
of $10,000 payable on the terms and conditions fixed and
imposed by said judgment.

"And should the said William C. Hoefflin fail to at-
tend at said sale and make the aforesaid bid, then the
undersigned agree that the commissioner of this court
(or any person whom the court may authorize or direct
to do) may bid for and in the name of the said William
C. Hoefflin the aforesaid sum of $10,000, and may exe-
cute sale bonds called for by the aforesaid judgment and
sign the names of the undersigned (as principal and
surety thereon respectively). And the said under-
signed agree that of the aforesaid acts of the commis-
sioner of this court (or any person whom the court may
authorize or direct so to do) shall have the same force
and effect as if made and done by the undersigned
themselves in person.

"In testimony of all which witness the hands of Wil-
liam C. Hoefflin, and the National Surety Company (by
and through J. Morton Morris, its attorney-in-fact), this
April 7th, 1911.

"WILLIAM C. HOEFFLIN.
"NATIONAL SURETY COMPANY,
"By J. Morton Morris, Attorney-in-Fact."

The exceptions were heard and sustained by the trial
court. The purchaser, Summers, appealed the case to
this court, where, upon consideration, it was affirmed in
November, 1911. Summers v. Crofts, 145 Ky., 456.

The property was again offered for sale on March 18,
1912, whereupon one S. S. Summers bid $6,700 for the
property, no one else having bid on it. The commissioner
returned his report of sale, so much of which as is
material to a determination of the question under con-
sideration is as follows:

"I next offered and cried all of said real estate, as a
whole, when and where S. S. Summers made the highest
bid therefor, to-wit, $6,700; which said sum of $6,700
was more than said $6,250 realized by said property when
offered in six lots separately, and said property as a
whole was knocked down to said S. S. Summers as the
highest bidder therefor, at said sum of $6,700. The com-
missioner states that he was instructed by defendants,
Bertha Christ Crofts and Samuel T. Crofts, her husband,
and Wm. C. Hoefflin and the National Surety Company,

all by their attorney, S. M. Sapinsky, to offer for sale said property in six lots separately and as a whole, under the terms of the judgment, and to report to the court the result of such offerings, and the commissioner has complied with such instructions, as above shown.

"The commissioner states that, by a bond filed in this action, duly executed by William C. Hoefflin, as principal, and the National Surety Company, as surety, the said William C. Hoefflin and the National Surety Company obligated themselves that the said William C. Hoefflin would, in the event the former sale herein was set aside, and the exceptions thereto sustained, at a new sale, bid for said property the sum of $10,000; and agreed that should said William C. Hoefflin fail to attend at said new sale, and make the aforesaid bid of $10,000, then the commissioner of this court might bid for and in the name of the said William C. Hoefflin the aforesaid sum of $10,000, and might execute sale bonds called for and sign the names of said William C. Hoefflin, as principal, and The National Surety Company, as surety, thereto.

"The commissioner further states that said former sale was set aside and said exceptions were sustained, and that the plaintiff, the Kentucky Title Savings Bank and Trust Company, has insisted upon the commissioner, under said bond, reporting said William C. Hoefflin as purchaser of said property at this sale at said sum of $10,000, and has further insisted upon the commissioner executing sale bonds for the deferred payments in behalf of said William C. Hoefflin, as principal, and The National Surety Company, as surety. And the commissioner now in accordance with said insistence reports the said William C. Hoefflin as purchaser of said property, as a whole, at said sum of ten thousand dollars; and the commissioner has further executed for the deferred payments on behalf of said William C. Hoefflin, as principal, and the said The National Surety Company as surety, two sale bonds, bearing date herewith, and interest from said date of sale until paid, for $3,333.33 each, and payable respectively in six and twelve months from date; which said two bonds aggregate $6,666.66, and are returned herewith. The difference between said $6,666.66 and said purchase price of $10,000 is $3,333.34, said $3,333.34 being one-third cash payment, payable on confirmation of report of sale.

"The commissioner further states that said Kentucky Title Savings Bank and Trust Company, plaintiff herein,

by counsel, and said William C. Hoefflin and The National Surety Company and the said defendants, Bertha Christ Crofts and Samuel T. Crofts, her husband, by S. M. Sapinsky, counsel of said last named four parties, instructed the commissioner not to announce at this sale the bid of $10,000 for said property, which bid said William C. Hoefflin, as principal, and The National Surety Company, as surety, obligated themselves, under said bond, said William C. Hoefflin would make at this sale. And the said William C. Hoefflin and The National Surety Company and Bertha Christ Crofts and Samuel T. Crofts, by their counsel, S. M. Sapinsky, waived the crying of said bid of $10,000 by the commissioner and waived any effort on the part of the commissioner to obtain at this sale an advance upon said sum of $10,000.''

Thereafter S. S. Summers, the bidder, Hoefflin, The National Surety Company, his surety on the bond referred to, and the Crofts, the owners of the property, filed exceptions to the report of sale, claiming that S. S. Summers was entitled to have the sale of the property to him confirmed on his bid of $6,700. The plaintiff sought to have the report of sale, as made by the commissioner, confirmed. Upon consideration, the court overruled the exceptions to the report of sale as made by the commissioner and confirmed the sale to Hoefflin. He and his surety appeal.

The court was influenced in the main, if not entirely, in setting aside the former sale, by the execution of the bond by appellant, Hoefflin, in which he obligated himself to bid $10,000 for this property, if it should again be offered for sale. He was not a party to the litigation; nor was he, in anywise, interested in the result. But, when he volunteered to become a bidder on the property and to pay for it at least $10,000, in the event the court would give him an opportunity to do so, by setting aside the sale to Louis Summers and directing the property to be resold, he placed himself in a position whereby he was compelled to take the property at a resale, unless some one bid therefor in excess of $10,000. The act of the court in permitting the affidavit and bond of Hoefflin to be filed made him a party to the suit, and he is bound by the further orders of the court relative to the sale of this property. Wiggington v. Nehan, 25 Rep., 617.

It was not necessary that Hoefflin should bid at the sale. He need not have attended, or been present, when

it was made. His contract and bond made it unnecessary for him to do so. The commissioner was fully authorized and empowered to represent him and bid in the property for him, in the event it did not bring in excess of $10,000. Having induced the court, by reason of his offer to buy and bond guaranteeing his bona fides in making this offer, he is in no position to decline to receive and pay for the property at the price which he agreed to pay for it, to-wit, $10,000. To hold that one, after inducing the court to set aside a sale and direct the property sold over again, as was done by appellant in this case, could idly refuse to carry out his contract and take the property, would be to sanction an imposition upon the court, a trifling with justice, and would, in fact, be equivalent to holding that the proposition made by appellant to purchase was of no binding force and effect and one which he could repudiate at will. We do not so lightly regard it. The proposition submitted by appellant was made for the purpose of inducing the court to direct a resale of the property, and the court having acted favorably upon it and directed the sale, appellant was bound to comply with his undertaking and buy the property, or, at least, bid $10,000 therefor.

Appellant was powerless to prevent the commissioner from crying his bid, and his effort to have the sale confirmed to another, at a price less than that which he obligated himself to pay, cannot have the effect of relieving him of the duty of carrying out the contract which he made with the court, even though the owners of the property consented thereto. The arrangement was not made with them, although really for their benefit. They are in no position to relieve appellant from any hardship that may result to him, by reason of his having obligated himself to bid $10,000 for this property. If they choose to do so, they can give to appellant, Hoefflin, any money that may be going to them, after the debt, interest, taxes, and costs are satisfied, but they cannot prevent or waive his carrying out his agreement with the court. The court properly held that, under the proposition made by appellant, he was compelled to receive the property at the price which he agreed to pay for it, no one else having offered, at the sale, to bid as much or more.

Having obligated himself to bid this amount of money for the property and directed the commissioner to bid for him, in the event of his failure to do so, appellant stands in the same attitude or position as would any other

purchaser at a decretal sale. The bonds having been executed as authorized and directed by appellant's written proposition, in which his surety joined, they are as binding upon appellant and his surety as though they had been executed in the usual and customary way; and the court may enforce payment of the amount of the purchase money, which the judgment requires to be paid in cash, by summary proceedings. This rule of procedure was recognized and followed in the following cases: Dean v. Gritton, 13 Rep., 99; Napper v. Mutual Life Insurance Co. of Kentucky, 107 Ky., 134; Cowper v. Weaver, 119 Ky., 401; Blakely v. Hughes, 140 Ky., 174.

Being of opinion that the court did not err in confirming the report of sale and requiring appellant to comply with the terms of the contract, into which he induced the court to enter with him, relative to the purchase of this property, the judgment of the court confirming the sale to him is affirmed.